## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Tiffany T.,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security,<br><br>Defendant. | Civil No. 3:22-CV-00626-MPS<br><br><br><br>September 1, 2023 |

## <u>RECOMMENDED RULING ON PENDING MOTIONS</u>

The Plaintiff, Tiffany T.,[1] appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), rejecting her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. (Compl., ECF No. 1.) She has moved the Court for an order reversing the Commissioner's decision and remanding for the payment of benefits, or for a new hearing. (ECF No. 12.) The Commissioner has moved for an order affirming the decision. (ECF No. 18.) The original presiding District Judge, the Honorable Stefan R. Underhill, referred the two motions to me, Magistrate Judge Thomas O. Farrish, for a recommended ruling. (ECF No. 11.) The case has since been reassigned to the Honorable Michael P. Shea. (ECF No. 16.)

The Plaintiff offers several principal arguments for reversal and remand. (*See* discussion, Section III *infra*.) For reasons that will become clear, it makes sense to address them in a different order than she does. First, the Plaintiff contends that the Administrative Law Judge ("ALJ")

---

[1]     Pursuant to the Court's January 8, 2021 Standing Order, the Plaintiff will be identified as "Plaintiff" or by first name and last initial throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

committed reversible error in failing to advise her of her right to be represented by an attorney at the hearing.  (*Id.* at 5-9.)  Second, she argues that the transcript of the hearing is not clear enough to permit judicial review.  (*Id.* at 22-24.)  Third, she argues that the ALJ committed several errors in his analysis of the medical opinion evidence.  (*Id.* at 12-19.)  Fourth, she contends that the ALJ did not appropriately evaluate her credibility.  (*Id.* at 19-20.)  Fifth, she argues that the ALJ's Step Five analysis contained a legal error and was not supported by substantial evidence.  (*Id.* at 9-11.)

Having carefully considered the parties' submissions, and having carefully reviewed the entire, 1,408-page administrative record, I conclude that the ALJ committed no reversible legal error and that his decisions were supported by substantial evidence.  Accordingly, I recommend that the Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 12) be **DENIED;** that the Commissioner's Motion to Affirm the Decision (ECF No. 18) be **GRANTED**; and that judgment enter in the Commissioner's favor.  I also recommend that the Plaintiff's Objection to the Supplemental Record (ECF No. 21) be **OVERRULED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On January 31, 2019, the Plaintiff filed an application for DIB under Title II of the Social Security Act.  (R. 20, 200-03, 221.)[2]  She claimed that she could not work because of carpal tunnel surgery and associated injuries to her hand, depression, and a transient ischemic attack – also known as a "mini stroke."  (R. 88.)  She alleged a disability onset date of May 1, 2018.[3]  (R. 23, 200.)

---

[2]      Citations to the administrative record will refer to the record pagination, not to the page numbers assigned by the CM/ECF system.

[3]      The relevant period under review for Plaintiff's DIB benefits runs from May 1, 2018, her alleged onset date, through the date of the ALJs decision, April 27, 2021.  20 C.F.R. §§ 404.130, 404.315(a); *Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir. 1989).  The Plaintiff's date last insured for DIB is June 30, 2023.  (R. 17.)

On April 10, 2019, the Social Security Administration ("SSA") found that the Plaintiff was "not disabled."  (R. 98, 123-33.)  The SSA again denied her claim on reconsideration on June 30, 2020.  (R. 119, 135-43.)  The Plaintiff then requested a hearing before an ALJ, and on January 22, 2021, Judge Michael McKenna held a hearing.  (R. 53-85, 144-45.)  The ALJ also heard testimony from a vocational expert ("VE"), Christopher Skerritt.  (R. 79-84, 335-36.)  The Plaintiff retained a non-attorney representative for the application process, but her representative withdrew on November 13, 2020, and the Plaintiff represented herself at the hearing.  (R. 56-58, 121-22, 187.)

On April 27, 2021, the ALJ issued an unfavorable decision.  (R. 17-35.)  As will be discussed below, ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims (*see* discussion, Section II *infra*), and ALJ McKenna's written decision followed that format.  At Step One of his analysis, he found that the Plaintiff had not engaged in substantial gainful activity since her claimed disability onset date of May 1, 2018.  (R. 23.)  At Step Two, he found that the Plaintiff suffers from the severe impairments of obesity, degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, major depressive disorder, and post-traumatic stress disorder.  (*Id.*)  He also found that the Plaintiff had medically determinable impairments of obstructive sleep apnea, hypertension, and a migraine disorder, but concluded that they were non-severe.  (R. 24.)  Finally at Step Two, he found that the Plaintiff's allegations of plantar fasciitis, vision impairment, and transient ischemic attack were not medically determinable.  (*Id.*)

At Step Three, the ALJ concluded that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. Part 404, Subpart B, Appendix 1.  (R. 24-27.)  He then determined that, notwithstanding her impairments, the Plaintiff retained the residual functional capacity

("RFC") to perform light work, but with the following limitations:

> [T]he [Plaintiff] can lift and carry 20 pounds frequently and 10 pounds occasionally, can stand and walk six hours and sit for six hours in an eight hour day. The [Plaintiff] can frequently use fine and gross manipulation and feel with the bilateral upper extremities. She can occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, frequently balance and stoop, occasionally kneel, crouch, and crawl. The [Plaintiff] is able to perform simple routine tasks, have occasional interaction with supervisors and coworkers, no tandem tasks, incidental contact with the public, and is able to accept occasional changes to a routine work setting.

(R. 27-28.) At Step Four, the ALJ found that the Plaintiff was unable to perform her past relevant work as a customer service representative, sales representative, or call center representative. (R. 34.) At Step Five, he relied on VE Skerritt's testimony to conclude that the Plaintiff could perform the jobs of photocopy machine operator, marker, or routing clerk, and that each position exists in significant numbers in the national economy. (R. 34-35.) In summary, he found that the Plaintiff had not been under a disability, as defined in the Social Security Act, from May 1, 2018, through April 27, 2021. (R. 35.)

On May 27, 2021, the Plaintiff requested that the Appeals Council review the ALJ's decision. (R. 194-96.) On February 4, 2022, the Council found "no reason under our rules" to do so" and, therefore, denied the Plaintiff's request for review. (R. 12-14.) The Plaintiff then retained counsel, and on February 16, 2022, she asked the Appeals Council to reopen the case and allow her to submit a brief. (R. 44-52, 197.) The Appeals Council reopened the case and considered the Plaintiff's brief. (R. 1, 7, 358-60.) On April 6, 2022, the Council again found "no reason under our rules to review the [ALJ']s decision" and denied the Plaintiff's request for review. (*Id.*) It added that if the Plaintiff wished to contest the decision, she could "ask for court review . . . by filing a civil action." (R. 2.)

The Plaintiff then filed this action on May 5, 2022. (Compl., ECF No. 1.) The Commissioner answered the complaint by filing the administrative record on June 30, 2022. (ECF

No. 8; *see also* D. Conn. Standing Scheduling Order for Social Security Cases, ECF No. 4, at 2 (stating that the Commissioner's filing of the administrative record is "deemed an Answer (general denial) to Plaintiff's Complaint").) On August 16, 2022, the Plaintiff filed her Motion to Reverse the Decision of the Commissioner. (ECF No. 12.) On November 11, 2022, the Commissioner filed a Motion to Affirm the Decision of the Commissioner. (ECF No. 18.) The Plaintiff filed her reply brief on December 7, 2022. (ECF No. 22.)

The Commissioner also filed a supplement to the administrative record on November 10, 2022, stating that the signature page from a consultative examiner's report had been inadvertently omitted from the record. (ECF No. 17.) The Plaintiff objected to the supplement, arguing that the Commissioner had failed to comply with the scheduling order and that the signature page constituted "new evidence" that "requires a remand." (ECF No. 21.) The Commissioner responded to the objection on December 16, 2022. (ECF No. 23.) In this Recommended Ruling, I will address the Plaintiff's objection as well as the two dispositive motions.

## II.    APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)). To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). At Step Two, the ALJ analyzes "whether the claimant

has a severe impairment or combination of impairments . . . ." *Id.*  At Step Three, the ALJ then evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations.  *Id.*  At Step Four, the ALJ uses an RFC assessment to determine whether the claimant can perform any of her "past relevant work." *Id*.  At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience."  *Id.*  The claimant bears the burden of proving her case at Steps One through Four. *Id.*  At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function."  *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).  Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error.  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error."  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner.  *See Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted).  When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he has made a material legal error.  In other words, district courts do not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).  "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## III. DISCUSSION

In this case, the Plaintiff claims that the ALJ's decision was legally erroneous or unsupported by substantial evidence in five principal respects.  (*See generally* ECF No. 12-1.)  Taking them in the order in which they arose in the administrative process, rather than in the order in which she raised them in her briefs, the Plaintiff first contends that the ALJ failed adequately to apprise her of her right to counsel.  (*Id.* at 5-9.)  Second, she argues that the transcript of the hearing is not clear enough to permit judicial review.  (*Id.* at 22-24.)  Third, she says that the ALJ committed several errors in his analysis of the medical opinions and the medical evidence.  (*Id.* at 12-19.)  Fourth, she argues that the ALJ did not appropriately evaluate the credibility of her testimony.  (*Id.* at 19-20.)  Fifth and finally, she contends that the ALJ's Step Five analysis contained a legal error and was not supported by substantial evidence.  (*Id.* at 9-11.)  I will address

each argument in turn.

### A.    Apprising the Plaintiff of her Right to Counsel

The Plaintiff first argues that the ALJ failed to apprise her of her right to representation by an attorney.  (ECF No. 12-1, at 5-9.)  She says that the SSA's written notices of hearing "did not advise [her] she had the right to an attorney."  (*Id.* at 5.)  And she adds that, at the hearing itself, the ALJ merely advised her of her right to a representative – not of her right to an attorney.  (*Id.* at 7-8.)  Contending that the latter omission was particularly prejudicial (*id.* at 8), she argues that her case should be remanded on this basis.

The Plaintiff's argument implicates well-settled principles.  While claimants do not have a constitutional right to counsel at a Social Security disability hearing, they do have statutory and regulatory rights to be represented if they choose to obtain an attorney.  *Lamay*, 562 F.3d at 507.  Claimants may waive this right, but the ALJ must ensure that any such waiver is knowing and intelligent.  *Holliday v. Astrue*, No. 05-cv-1826 (DLI/VVP), 2009 WL 1292707, at *10 (E.D.N.Y. May 5, 2009); *Lamay*, 562 F.3d at 507 ("If properly informed of this right, a claimant may waive it.").  Before the hearing, the Commissioner must "'notify [the] claimant in writing' of (1) her 'options for obtaining [an] attorney[ ] to represent [her]' at her hearing, and (2) 'the availability . . . of . . . organizations which provide legal services free of charge' to 'qualifying claimants.'"  *Id.* (quoting 42 U.S.C. §§ 406(c), 1383(d)(2)(D)).  And at the hearing itself, the ALJ "must ensure that the claimant is aware of [her] right [to counsel]."  *Id.* (quoting *Robinson v. Sec'y of Health & Hum. Servs.*, 733 F.2d 255, 257 (2d Cir. 1984)).

Here, the Plaintiff contends that the written notices were inadequate (ECF No. 12-1, at 5), but I disagree.  She observes that the pre-hearing notices did not specifically advise her of her right to an attorney (*id.*), and that is true enough.  (R. 161-65, 188-91.)  But as the Commissioner points

out, the initial and reconsideration benefit determination letters both informed the Plaintiff that she could have a lawyer help with an appeal, and further informed her of legal organizations that might provide services free of charge. (ECF No. 18-1, at 4-5; R. 124, 136.) The Second Circuit has held that the Commissioner can satisfy its written disclosure requirements by including these sorts of warnings in the initial notice of disapproved claim. *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) (summary order); *see also Crysler v. Astrue*, 563 F. Supp. 2d 418, 431 (N.D.N.Y. 2008) (observing that a similar written notice "comport[ed] with the minimal requirements imposed by the Act in connection with advice regarding legal representation"). The Plaintiff has not pointed to any authority holding that this form of written notice is inadequate.

The Plaintiff is on somewhat firmer ground when she argues that the ALJ failed to inform her of her right to counsel at the hearing. (ECF No. 12-1, at 6-9.) As she notes in her brief, the ALJ spoke only of her "right to be represented" at a disability benefits hearing, not of her right to be represented *by an attorney.* (*Id.* at 7; R. 56.) And as Judge Chatigny has explained, "notifications that inform claimants of the right to 'representation' or to a 'representative' without making clear that the representative can be a lawyer are deemed inadequate." *Alford v. Saul*, 417 F. Supp. 3d 125, 136 (D. Conn. 2019) (collecting cases). In using the term "representative," and in failing to advise the Plaintiff that there are legal service organizations that could help her, the ALJ ostensibly failed to comply with his obligations. *Id.*; *see also Sheerinzada v. Colvin*, 4 F. Supp. 3d 481, 496 (E.D.N.Y. 2014).

Yet not all such failures constitute a basis for remand. When an ALJ fails to apprise a claimant of her right to counsel, remand is only required "if the lack of counsel resulted in prejudice to the claimant or unfairness in the proceeding." *Hynes v. Astrue*, No. 12-cv-719 (JFB), 2013 WL 3244825, at *13 (E.D.N.Y. June 26, 2013); *Alford*, 417 F. Supp. 3d at 140 ("Remand is proper

only when lack of counsel results in unfairness or prejudice to the claimant."). "Determining whether a claimant was prejudiced is bound up in the inquiry of whether the ALJ properly conducted the hearing and adequately developed the record in the manner the Second Circuit requires in a *pro se* case." *Acevedo v. Colvin*, No. 3:15-cv-0054 (WIG), 2016 WL 1618260, at *4 (D. Conn. Feb. 29, 2016), *report and recommendation adopted*, 2016 WL 1588488 (D. Conn. Apr. 20, 2016) (internal citation and quotation marks omitted). "[I]f the ALJ fully developed the record and based his final determination on substantial evidence, any deficiency in plaintiff's waiver would be immaterial for purposes of remand." *Valoy v. Barnhart*, No. 02-cv-8955 (HB), 2004 WL 439424, at *6 (S.D.N.Y. Mar. 9, 2004); *see also Salomon v. Apfel*, 99 Civ. 4250 (SAS), 2000 WL 776924, at *6 (S.D.N.Y. June 15, 2000) ("Even if the waiver is not deemed knowingly and voluntarily made, the reviewing court need not remand the case as long as the ALJ fully developed the record and based his decision on substantial evidence.").

In this case, the Plaintiff argues that the ALJ failed to develop the record by requesting additional progress notes from Hartford Behavioral Health. (ECF No. 12-1, at 8.) She underwent counseling and mental health treatment at the Wheeler Clinic from March 18, 2019 through April 1, 2021, and the record contains 431 pages of progress notes and other records from that provider. (Exh. 21F, R. 934-1364.) In one such note, Wheeler recorded the Plaintiff as saying that she had also been "engaging in a free counseling service through Hartford Behavioral Health." (R. 1069.) The SSA requested records from Hartford Behavioral Health, and the provider responded with a single document – a fifteen-page intake assessment. (R. 701-15.) Nothing in the record suggests that the Plaintiff returned to Hartford Behavioral Health after this initial visit, but on appeal to this Court, she nonetheless argues that it was reversible error for the ALJ not to inquire whether the provider had any updated progress notes. (ECF No. 12-1, at 8.)

10

Courts have declined invitations to reverse and remand under similar circumstances.  In *Morris v. Berryhill*, for example, the Second Circuit rejected an argument about allegedly missing treatment notes when there were "numerous assessments and notes from other physicians that cover[ed] each possible impairment;" when "the potentially missing records . . . would consist of routine check-up and progress notes, with no indication that they contain significant information;" and where it was "not even clear that any records [were] actually missing."  721 F. App'x 25, 28 (2d Cir. 2018) (summary order).  Similarly, Judge Meyer declined to reverse and remand a case over allegedly missing records when it was "not clear that records . . . actually exist," and the plaintiff had "not said, and the record [did] not show, why they . . . would be significant."  *Crespo v. Comm'r of Soc. Sec.*, No. 3:18-cv-00435 (JAM), 2019 WL 4686763, at *5 (D. Conn. Sept. 25, 2019).  The same circumstances exist here.  As in *Morris*, there are "numerous assessments and notes" from other mental health providers, including 431 pages of notes from the Wheeler Clinic, and the allegedly missing records would consist of progress notes for the same period.  And as in both *Morris* and *Crespo*, it is not clear that any records are actually missing, and the Plaintiff has not shown that they would be significant.

In summary, the ALJ erred by failing to inform the Plaintiff that she had a right to be represented by an attorney at the hearing.  But this error merits remand only when the plaintiff has been prejudiced, and the cases in the Second Circuit define "prejudice" in this context with reference to the ALJ's duty to develop the administrative record.  Because the Plaintiff has not shown that that duty was breached, I recommend that this claim of error be denied.

### B.    The Transcript is Sufficiently Clear for Review

The Plaintiff next argues that the ALJ's decision should be reversed because the hearing transcript has too many instances of "[INAUDIBLE]" to permit effective judicial review.  (ECF

No. 12-1, at 22-24.)   She says that "[t]he hearing transcript contains eleven instances of inaudibility," and "[m]any of these periods of inaudibility occur during key moments of the testimony."  (*Id.* at 23; *see also* R. 60, 63, 71, 73, 75, 77, 78, 84.)   The Commissioner responds that the Plaintiff has failed to establish that any critical information was omitted from the transcript. (ECF No. 18-1, at 7-8.)

The Plaintiff is correct that a transcript of an administrative hearing must allow for meaningful judicial review.   "[C]ourts have remanded where the hearing transcript contained numerous 'inaudible' sections, making adequate judicial review difficult, if not impossible." *Shannon Jo H. v. Comm'r of Soc. Sec.*, No. 5:21-cv-878 (CFH), 2023 WL 246841, at *13 (N.D.N.Y. Jan. 18, 2023).   The SSA's own Hearings, Appeals, and Litigation Law Manual ("HALLEX") acknowledges that VE testimony is particularly "vital," and where a VE testifies, "the transcription must be as complete and accurate as possible."   HALLEX I-4-1-53, Hearing Transcript, 1993 WL 643630, at *1.

Courts have not, however, generally remanded for rehearing based on the number of gaps present here.  In *Sherry L. v. Commissioner of Social Security,* for example, the Court affirmed an ALJ's decision even though "the transcript denote[d] testimony as 'inaudible' in at least 50 spots." No. 20-cv-01432, 2022 WL 2180159, at *4 (W.D.N.Y. June 16, 2022).   Conversely, the court remanded the case of *Bula v. Commissioner of Social Security* in part because of transcript gaps, but there were "dozens" of them, including in a key passage about the claimant's daily activities. No. 6:06-cv-1325 (GLS/GJD), 2009 WL 890665, at *9 (N.D.N.Y. Mar. 30, 2009).   Similarly, a California federal district court remanded a case in part because of inaudible passages, but it noted that there were twenty-two such passages in the VE's testimony alone.   *Parks v. Astrue*, No. 1:10-cv-01955 (GSA), 2011 WL 6211003, at *8 (E.D. Cal. Dec. 14, 2011).   In this case, there are fewer

gaps than the cases in which a remand was ordered.

Of course, the substance of the gaps is more important than their raw number. But as a sister circuit's Court of Appeals has explained, "[a]bsent an indication that the missing portion of the transcript would bolster appellant's arguments or prevent judicial review, this Court will not remand a case based upon inaudible portions of the record." *Williams v. Barnhart*, 289 F.3d 556, 557–58 (8th Cir. 2002). In the case cited by the Plaintiff, for example, the court reversed an ALJ's decision not because of the number of transcript gaps, but rather because the omissions made "it difficult to understand exactly what [a key independent medical expert] was saying and/or to discern the basis for his expert opinions." *Ainsworth v. Astrue*, No. 09-cv-286-SM, 2010 WL 2521432, at *4 (D.N.H. June 17, 2010).

Here, the Plaintiff has not shown that missing portions would support her arguments or frustrate judicial review. Citing the gap at R. 84, she claims that "[t]he ALJ may have said something that dissuaded [her] from following up with the VE as evidenced by [her] discontinuation of her statement." (ECF No. 12-1, at 23.) But this is just speculation, and speculation does not carry a claimant's burden to show "that the missing portion of the transcript would bolster [her] arguments[.]" *Mireles ex rel. S.M.M. v. Comm'r of Soc. Sec.*, No. 1:13-cv-699, 2014 WL 4854426, at *6 (W.D. Mich. Sept. 29, 2014) (quoting *Williams*, 289 F.3d at 557-58); *cf. also Shannon Jo H.*, 2023 WL 246841, at *14 (observing that "conjecture" about the possible incompleteness of a transcript is not grounds for remand). The Plaintiff then cites the gap at R. 60, in which a medical provider's name is rendered as "inaudible," and she argues that "[i]t is unknown what doctor [she] referenced and the record may not be completely developed." (ECF No. 12-1, at 23) (citing R. 60). But at the end of that same exchange, she told the ALJ that he "must have everything," thus confirming the completeness of the record. The Plaintiff attacks the

gap at R. 78, which she claims is particularly prejudicial because it concerned church attendance and "the ALJ relied on . . . attendance of church in support of his negative credibility finding." (ECF No. 12-1, at 23-24.)  But other passages in the transcript confirm that she "regularly goes to church" and "participates in choir;" thus, there is ample support for this portion of the ALJ's opinion, even in the absence of the "inaudible" testimony.  (R. 29, 78.)  Finally, the Plaintiff complains about a gap in her testimony about her eyesight (ECF No. 12-1, at 24) (citing R. 75), but the medical record elsewhere documents 20/30 corrected vision.  (R. 728.)  In short, the Plaintiff has not shown that any of the transcript gaps are prejudicial or consequential.

## C.    The ALJ Committed no Error in his Treatment of the Medical Opinions

The Plaintiff next claims that the ALJ committed several errors in his analysis of the medical opinion evidence.  Specifically, she argues that he (1) improperly analyzed the opinion of a consulting examiner, Dr. Jacob Yacov Kogan; (2) failed to resolve an alleged inconsistency between state agency consultants; (3) improperly discounted the opinion of her treating physician; and (4) failed to treat her GAF scores as medical opinions.  (*See* ECF No. 12-1, at 12-19.)  After setting forth the applicable legal principles, I will address each of these arguments.

### 1.    Legal Principles

For applications such as this one, which are filed on or after March 27, 2017, the SSA has changed how ALJs are to assess medical opinions.  The new regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. § 404.1520c(a).  According to these regulations, ALJs must "articulate . . . how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record" based on the following five factors:  (1)

supportability; (2) consistency; (3) relationship with the claimant, which focuses on the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the examining relationship; (4) the specialization of the source; and (5) "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the "[m]ost important" of the five, 20 C.F.R. § 404.1520c(b)(2), and accordingly the ALJ must explicitly articulate how he considered those two factors. *See* 20 C.F.R. § 404.1520c(b)(2). He may, but is not required to, explain how he considered the other three. *Id.*

When considering "supportability," ALJs are directed to look to "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(c)(1). The "consistency" factor goes to the opinion's consistency with other evidence in the record. "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

### 2. Dr. Kogan

#### a. *20 C.F.R. § 404.1519p*

The ALJ relied on the opinion of a consulting examiner, Dr. Jacob Yacov Kogan. (R. 32.) Dr. Kogan examined the Plaintiff on June 24, 2020. (R. 726-29.) With respect to physical impairments, he concluded that the Plaintiff had no range of motion or neurological deficits, but that her generalized musculoskeletal pain would mildly limit her ability to sit, stand, walk, bend, lift, carry, reach, or finely manipulate. (R. 729.) With respect to mental impairments, he concluded that the Plaintiff had "preserved level[s]" of consciousness, language, memory, and concentration,

and that her work-related activities involving speaking, comprehending, remembering, and carrying out instructions would not be limited.  (*Id.*)  The ALJ found the opinion to be persuasive, concluding that Dr. Kogan's opinion was supported by a direct examination of the Plaintiff, consistent with her medical records, and consistent with her activities of daily living.  (R. 32.)

In assailing the ALJ's reliance on Dr. Kogan, the Plaintiff focuses on 20 C.F.R. § 404.1519p.  (ECF No. 12-1, at 12.)  That regulation outlines the SSA's process for reviewing consulting examiner reports.  Subsection (a) directs claims adjudicators to consider several factors when reviewing the report, such as its evidentiary support, internal consistency, and consistency with other record evidence.  20 C.F.R. § 404.1519p(a).  Subsection (b) states that if the report "is inadequate or incomplete," the adjudicator should "contact the medical source who performed the consultative examination, give an explanation of [the SSA's] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report."  20 C.F.R. § 404.1519p(b).

The Plaintiff argues that the ALJ failed to comply with § 1519p.  Observing that the ALJ made no specific "mention of 20 C.F.R. § 1519p," nor any "reference [to] any of the 20 C.F.R. § 404.1519p factors," she infers that he must have "fail[ed] to consider the completeness of" Dr. Kogan's report.  (ECF No. 12-1, at 13.)  In substance, she claims that an ALJ must not only *consider* the § 1519p(a) factors, but that he must also *articulate* that consideration in his opinion.

The Plaintiff cites no authority for this proposition, and the Court has not found any.  In contrast to 20 C.F.R. § 404.1520c, 20 C.F.R. § 404.1519p does not specify what an ALJ must articulate separately from what he must consider.  20 C.F.R. § 1519p(a) ("We will *consider* the following factors in reviewing the report") (emphasis added).  And when compliance with § 1519p(a) is challenged, courts do not typically examine whether all the factors have been

specifically articulated, but instead consider only whether the report "serves as an adequate basis for decision-making in terms of the impairment it assesses."  *E.g., Charles B. v. Comm'r of Soc. Sec.*, No. 1:19-cv-641 (CJS), 2021 WL 1169183, at *5 (W.D.N.Y. Mar. 29, 2021) (quoting 20 C.F.R. § 404.1519p(a)(1)); *Nicoletti v. Comm'r of Soc. Sec. Admin.*, No. 20-Civ.-5141 (KMK) (AEK), 2022 WL 6250371, at *9 (S.D.N.Y. Feb. 28, 2022), *report and recommendation adopted*, 2022 WL 4592902 (S.D.N.Y. Sept. 30, 2022).  Here, the Plaintiff has not even attempted to explain how Dr. Kogan's report is inadequate, incomplete, or fails to provide an adequate basis for the decision.  I therefore find no error in the ALJ's treatment of Dr. Kogan's opinion.

### b.       *Whether the Report is Signed*

The Plaintiff next challenges Dr. Kogan's report on the ground that the copy initially included in the administrative record was unsigned.  (ECF No. 12-1, at 13.)  To be sure, 20 C.F.R. § 404.1519p(a)(5) obliges the ALJ to consider whether a consultative examiner's report is "properly signed," and 20 C.F.R. § 404.1519o states that the SSA will not use an unsigned report. In this case, however, the Commissioner explains that the report was properly signed when it was reviewed by the ALJ.  The electronic signature page was merely inadvertently omitted from the administrative record compiled for appeal.  (ECF No. 18-1, at 9; *see also* ECF No. 17 (certification of Janay Podraza, SSA Chief of Court Case Preparation and Review Branch 2, stating that the "electronic signature page" was "inadvertently omitted when the record was initially certified").)

Even after this explanation, the Plaintiff continues to attack the report for lack of a signature.  She objected to the Commissioner's attempt to supplement the administrative record, arguing that the Court should either decline to admit the new submission or remand the case to the agency to consider the signature page as new evidence.  (ECF No. 21.)  The Commissioner responded to the objection, again noting that "the signature page was part of the administrative

file, and thus, before the ALJ and the Appeals Council."  (ECF No. 23, at 2.)

The Plaintiff raises two principal arguments in support of her objection, but I find neither one to be persuasive.  First, she says that "[t]he Commissioner's supplement does not comply with" that portion of the standing scheduling order that requires prompt notification to the opposing party of "material omission[s] from . . . the Certified Administrative Record."  (ECF No. 21, at 1.)  But she provides no reason to suppose that, after discovering the omission, the Commissioner's notice was anything less than prompt.  Second, she asserts that the signature page constitutes "new evidence" that cannot be considered by a reviewing court.  (ECF No. 21, at 1-2) (citing *Ellis v. Bowen*, 820 F.2d 682 (5th Cir. 1987)).  But "new evidence," in this context, means evidence that was not before the ALJ.  *See, e.g., Pantojas v. Apfel*, 87 F. Supp. 2d 334, 338 (S.D.N.Y. 2000). Here, the signature page was before the ALJ, even if it was inadvertently omitted from the administrative record initially filed with this Court.  The documents are thus not new evidence. Accordingly, I recommend that the Plaintiff's objection (ECF No. 21) to the supplement be overruled, and that the documents at ECF No. 17 be considered part of the record.  Considering the documents, Dr. Kogan's report is clearly signed (R. 1413), and the Plaintiff's form-over-function argument is without merit.

### 3.      State Agency Consultants

The Plaintiff also argues that the assessments of the state agency consultants at the initial and reconsideration level are inconsistent with one another.  At the initial level, Dr. Jeffrey Holtgrewe analyzed the Plaintiff's carpal tunnel syndrome and other hand impairments and concluded that, "[a]lthough [her] condition is currently severe, it is expected to improve."  (R. 99.) Based on this assessment, the SSA "determined that [the Plaintiff's] condition is not expected to remain severe enough for 12 months in a row to keep [her] from working."  (*Id.*)  At the

reconsideration level, Dr. Rafael Wurzel acknowledged that the Plaintiff's hand condition "results in some limitations in [her] ability to perform work related activities," but nonetheless concluded that her "condition is not severe enough to keep [her] from working." (R. 119.) On appeal to this Court, the Plaintiff claims that these two opinions are in conflict, because "the initial decision . . . was . . . a durational denial, while [the] reconsideration decision stated that her condition was not severe enough to preclude all work." (ECF No. 12-1, at 16.) She argues that it was error for the ALJ not to resolve this "conflict." (*Id.*)

I disagree, because the two assessments do not genuinely conflict. Dr. Holtgrewe issued his report on April 10, 2019, after reviewing medical records dated May 14, 2018 to February 7, 2019. (R. 91, 99.) Dr. Wurzel issued his report on June 30, 2020, after considering additional medical records from April and October of 2019, and June of 2020. (R. 110, 120.) The additional records included "[r]eports [of] overall improvement," an ability "to make a complete fist," "good strength of the hands bilaterally," and "[f]ine finger movements" that were "normal bilaterally." (R. 110.) There is no conflict between an initial review that says, in substance, that a claimant has not demonstrated that her condition meets the durational requirement, and a reconsideration review that later says – based on additional information – that the condition is not sufficiently severe to preclude all work. Dr. Holtrgrewe thought that the Plaintiff's carpal tunnel condition might improve, and Dr. Wurzel summarized the newly acquired evidence demonstrating that her condition was continuing to improve after her carpal tunnel release surgery. (R. 110.) Additionally, as the Commissioner points out, the manipulative limitations proposed by each consultant are similar. (R. 95-96, 115.)

The Plaintiff also suggests in her reply brief that it was error to find Dr. Holtgrewe's opinion persuasive but not adopt the limitations he proposed. (ECF No. 22, at 4.) But it is well

established that ALJ need not adopt any one opinion and the ultimate determination is left to the ALJ. *My-Lein L. v. Comm'r of Soc. Sec.*, No. 1:20-cv-00446 (EAW), 2021 WL 3266230, at *3 (W.D.N.Y. July 30, 2021). The ALJ committed no error in his treatment of the state agency consultants.

### 4.    Dr. Buonocore

The Plaintiff next challenges the ALJ's treatment of a single-sentence opinion from her treating hand specialist, Dr. Samuel Buonocore. (ECF No. 12-1, 16-18.) The Plaintiff saw Dr. Buonocore for her carpal tunnel problems, and she underwent an endoscopic carpal tunnel release surgery on September 25, 2018. (R. 632-52, 697-700.) At the end of the doctor's records, there is a one-sentence opinion dated April 3, 2019 that states, in its entirety, "[i]t is my medical opinion that [the Plaintiff] should remain light duty with the restrictions of no lifting more than 5 lbs." (R. 648.) The ALJ considered this opinion to be unpersuasive, finding that it was vague, not supported by a function-by-function analysis, and not consistent with the Plaintiff's medical records and activities of daily living. (R. 31.)

The Plaintiff argues that the ALJ's decision must be reversed because he did not specifically "identify Dr. Buonocore as a specialist" (ECF No. 12-1, at 18), but this argument conflates the duty to consider and the duty to explain. As noted above, the new regulations require the SSA to consider five principal factors in determining the persuasiveness of medical opinion evidence, including "supportability," "consistency," the opining source's "relationship with the claimant," and "specialization." 20 C.F.R. § 404.1520c(c). But only supportability and consistency must be expressly explained in the written decision. 20 C.F.R. § 404.1520(b)(2) ("The factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions. . . . Therefore, we will

explain how we considered the supportability and consistency factors . . . in your determination or decision.")  The SSA "may," but is "not required to," explain how [it] considered" other factors like the source's relationship with the claimant or his area of specialty.  *Id.*; *see also Sheila Renee H. v. Kijakazi*, No. 3:21-cv-944 (TOF), 2022 WL 4181723, at *11 (D. Conn. Sept. 13, 2022).

The Plaintiff also urges the Court to reverse the ALJ because he "evaluated Dr. Buonocore's opinion alongside progress notes which were not hand specific" (ECF No. 12-1, at 18), but this argument misconstrues the ALJ's obligations.  The Plaintiff complains that the ALJ evaluated the Buonocore opinion in light of other records from her primary care providers at Asylum Hill Family Medicine (*id.*), but this is not error; indeed, the regulations affirmatively require it.  20 C.F.R. § 404.1520c(c)(2) (directing ALJs to compare the opinion "with the evidence from other medical sources and nonmedical sources in the claim"); *see also Balotti v. Comm'r of Soc. Sec.*, 605 F. Supp. 3d 610, 616 (S.D.N.Y. 2022) ("Consistency refers to the extent to which a medical source's opinion is consistent with other medical or non-medical sources.").

The ALJ sufficiently addressed the consistency of Dr. Buonocore's opinion.  Again, "[t]he 'consistency' factor goes to the opinion's consistency with other evidence in the record," and "the more consistent a medical opinion . . . is with the evidence from other medical sources . . . the more persuasive the medical opinion . . . will be."  *Sheila Renee H.*, 2022 WL 4181723, at *11 (quoting 20 C.F.R. § 416.920c(c)(2)); *see also* 20 C.F.R. § 404.1520c(c)(2).  Here, the ALJ reviewed the opinion alongside other medical evidence that showed "full range of motion, no bony tenderness, no swelling, no effusion, no crepitus, no deformity, and no laceration."  (R. 31.)  He also reviewed it alongside "the claimant's activities of daily living," including her ability to "prepare her own meals" and "do household chores."  (*Id.*)

The ALJ's supportability analysis presents a closer call, but it is sufficient for a conclusory

opinion like Dr. Buonocore's.  The ALJ's analysis is essentially a single sentence: he wrote that the opinion is "vague and does not provide a function-by-function analysis of the claimant's condition."  (R. 31.)  Had Dr. Buonocore's opinion been more detailed, more might have been required; but courts have found that it is not error for an ALJ to provide a brief assessment of similarly barebones medical opinions.  For example, in *Ayala v. Kijakazi*, the ALJ's "sole reference" to supportability was that the opining provider's opinion was "supported by only minimal reference to objective clinical and diagnostic findings."  No. 20-cv-09373 (RWL), 2022 WL 3211463, at *18 (S.D.N.Y. Aug. 9, 2022).  Yet since the provider had used a checkbox form with little elaboration and did not provide supporting records, the court found that the ALJ could properly discount the opinion's supportability with that single sentence. *Id.*  Similarly, in *Brian E. v. Kijakazi*, a consulting examiner provided vague assessments of the claimant's overall capability, "such as lack of an 'ability to work with optimal capacity,' an ability to 'work minimally and for short periods at an acceptable pace and with persistence as long as it does not over tax his ability,' and that '[h]e will likely be adequate only in brief and superficial contacts with others.'"  No. 22-cv-372 (ECT/JFD), 2023 WL 21920, at *2 (D. Minn. Jan. 3, 2023).  The ALJ concluded that the opinion was "vague" and did not specifically discuss any medical evidence that the examiner cited in support, but broadly concluded that "[o]verall, this opinion is not well supported." *Id.* at *1.  The court held that the ALJ sufficiently addressed supportability, explaining that "[t]he ALJ's determination that [the doctor's] opinion was 'vague,' and thus less supportable, was an acceptable reason to find it less persuasive."

It is worth noting that Dr. Buonocore's records reflect slow but steady improvement in the Plaintiff's hand symptoms after her carpal tunnel release surgery.  (R. 638 ("mild improvement"); R. 640 ("continued improvement"); R. 642 "improvement in the tingling of her left long and ring

fingers . . .  Her right hand is doing well."); R. 644, 646 ("overall improvement").  In the last

progress note in the record, Dr. Buonocore wrote that the Plaintiff had "good strength" of the hands

and was "improving."  (R. 646.)  "The fact that there is normal sensation and no nerve symptoms

over her proximal phalanges of the ring and long fingers is an excellent sign meaning that there

will likely be complete resolution of symptoms." (*Id.*)  In sum, the ALJ did not err in finding Dr.

Buonocore's highly restrictive opinion to be unpersuasive.

### 5.    GAF Scores

The Plaintiff's final argument regarding opinion evidence is that the ALJ failed to treat her

GAF scores as medical opinions.  (ECF No. 12-1, at 18-19.)  The Global Assessment of

Functioning ("GAF") is a psychological assessment scale from zero to 100 that "indicates [a]

clinician's overall opinions of an individual's psychological, social, and occupational

functioning." *Petrie v. Astrue*, 412 F. App'x 401, 406 n.2 (2d Cir. 2011).  Scores between 61 and

70 indicate mild symptoms; scores between 51 and 60 indicate moderate symptoms or moderate

difficulty in social, occupational, or school situations, *id.*; and a score between 41 and 50 indicates

serious symptoms. *Zabala v. Astrue*, 595 F.3d 402, 406 (2d Cir. 2010).  The Plaintiff claims that

she had GAF scores of 45-51 and that Social Security Regulations require that the ALJ treat a GAF

score as opinion evidence.  This argument suffers from several defects.

First, the assessments that the Plaintiff points to are not full GAF assessments.  She cites

three specific evaluations, yet each one is not a true GAF but rather a DLA-20, a shorter assessment

tool that produces only estimated GAF results.  (R. 982, 999, 1209); *see also Aparicio v. Colvin*,

No. CV G-13-119, 2014 WL 12531487, at *5 (S.D. Tex. Aug. 12, 2014), *report and

recommendation adopted*, 2014 WL 12531488 (S.D. Tex. Aug. 29, 2014) (discussing DLA-20).

Second, the authority that the Plaintiff cites for the proposition that GAFs must be treated as

medical opinion evidence has since been superseded. She cites SSA Administrative Message 13066 (ECF No. 12-1, at 19), the 2014 version of which did indeed instruct ALJs to treat GAF scores as opinions. Soc. Sec. Admin., Admin. Message 13066 REV (Oct. 14, 2014); *see also Mitchell v. Colvin*, No. 14-cv-04154, 2015 WL 5306208, at *12 (S.D.N.Y. Sept. 10, 2015). But the message was revised in 2017, and it now states that "for claims filed on or after March 27, 2017, we consider a GAF score" not as medical opinions but rather as "other medical evidence." Soc. Sec. Admin., Admin. Message 13066 REV 2 (June 28, 2017).

In any event, the Plaintiff overstates the law and the importance of GAF scores. Courts have noted that the most recent version of the Diagnostic and Statistical Manual ("DSM-V") removed the GAF, and that "a GAF score does not itself necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work." *Camille v. Colvin*, 104 F. Supp. 3d 329, 342 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016); *see also Mainella v. Colvin*, No. 13-CV-2453, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014). "Even prior to the release of the DSM–V in 2013, courts have held that an ALJ's failure to consider every GAF score is not a reversible error." *Schneider v. Colvin*, No. 3:13-CV-00790 (MPS), 2014 WL 4269083, at *4 (D. Conn. Aug. 29, 2014). "[T]he Social Security Administration has concluded, [u]nless the GAF rating is well supported and consistent with other evidence in the file, it is entitled to little weight under [the] rules." *Warrick v. Saul*, No. 3:19-cv-00674 (SALM), 2020 WL 2537459, at *5 (D. Conn. May 19, 2020). Moreover, even the 2014 version of the Administrative Message explained that "[u]nless [a] clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis." *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019). The GAF scores to which the Plaintiff points are merely estimates that are not

supported by references to medical evidence or a narrative.  The other GAF scores in the record are just numbers provided without any supporting explanation.  (*See* R. 1280, 1283, 1286, 1289, 1300, 1363.)  There is no error in the ALJ's treatment of the Plaintiff's GAF scores.

### D.    The ALJ Appropriately Evaluated the Plaintiff's Testimony

The Plaintiff next argues that the ALJ erred in his evaluation of her credibility.  (ECF No. 12-1, at 19-20.)  The ALJ concluded that "the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (R. 29.)  On appeal, the Plaintiff argues that the ALJ over-relied on and cherrypicked from an Adult Function Report in making this determination. (ECF No. 12-1, at 20-22.)  The Commissioner responds that the ALJ reasonably concluded that the Plaintiff's assertions of a complete inability to work conflicted with other record evidence. (ECF No. 18-1, at 15-17.)

The Plaintiff's argument implicates the SSA's two-step process for evaluating a claimant's symptoms.  *See* 20 C.F.R. § 404.1529(c)(1); *see also* Soc. Sec. Ruling ("SSR") 16-3P, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017) ("We use a two-step process for evaluating an individual's symptoms.").  In the first step of the process, the ALJ must determine whether the "medical signs or laboratory findings" show that the claimant "has a medically determinable impairment . . . that could reasonably be expected to produce" her symptoms.  *Id.*  If so, the ALJ then proceeds to the second step, at which he evaluates "the intensity and persistence of [the claimant's] symptoms such as pain," and determines the extent to which those symptoms "limit his or her ability to perform work-related activities."[4]  *Id.* at *4; *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir.

---

[4]    The Plaintiff uses the term "credibility" to describe this analysis (ECF No. 12-1, at 20), but the SSA no longer uses that term.  *See* SSR 16-3P, 2017 WL 5180304 at *2 ("[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this

2010).  In this case, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (R. 29.)  He added, however, that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (*Id.*)  Since the ALJ agreed with her at the first step, the Plaintiff's argument is necessarily a challenge to the way he handled the second step.

At that step, "the ALJ must consider all of the available evidence, including objective medical evidence, from both medical and nonmedical sources."  *Gonzalez v. Berryhill*, No. 3:18-cv-00241 (SRU), 2020 WL 1452610, at *12 (D. Conn. Mar. 25, 2020).  The ALJ "may not reject a claimant's subjective opinion regarding the intensity and persistence" of her symptoms "'solely because the available objective medical evidence does not substantiate . . . her statements."  *Id.* (quoting 20 C.F.R. § 416.929(c)(2)) (alteration omitted); *see also* 20 C.F.R. § 404.1529(c)(2).  If there is a conflict between the objective evidence and the claimant's testimony, "the ALJ 'must consider the other evidence,'" including "(1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; (5) treatment, other than medication, received for pain relief; (6) measures taken to relieve pain and other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms."  *Id.* (quoting *Graf v. Berryhill*, No. 3:18-cv-00093 (SRU), 2019 WL 1237105, at *8 (D. Conn. Mar. 18, 2019)) (internal quotation marks and alterations omitted).

---

term.  In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character.").

Provided that the ALJ follows this process, his conclusions are entitled to deference from this Court. "It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). These findings "are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'" *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (quoting *Lennon v. Waterfront Transp.*, 20 F.3d 658, 661 (5th Cir. 1994)); *see also Gonzalez*, 2020 WL 1452610, at *13 (same).

In this case, the ALJ followed the process set out in the Social Security regulations and rulings. He began by considering the objective evidence. With respect to the Plaintiff's degenerative disc disease, the ALJ noted that some "[o]bjective findings partially support the claimant's reported symptoms;" for example, "diagnostic imaging showed a 2mm anterior spondylolisthesis [at] L4 and L5" and "[p]hysical examinations from the relevant period showed tenderness and spasms." (R. 29.) At the same time, "physical examinations also showed full range of motion in the lumbar spine," "full strength in her lower extremities," and "normal" gait with "normal bilateral step length, speed and stride without antalgia, plegia, ataxia or instability." (*Id.*) With respect to the Plaintiff's carpal tunnel syndrome, the ALJ likewise observed that "[o]bjective findings partially support the . . . reported symptoms." (*Id.*) But "[o]ther physical examinations also showed full strength and normal sensation in the upper extremities," along with "full range of motion, no bony tenderness, no swelling, no effusion, no crepitus, no deformity and no laceration." (*Id.*) Moreover, the ALJ did not stop with the objective evidence, but instead went on to consider other 20 C.F.R. § 404.1529(c)(2) factors. For example, he considered the Plaintiffs' "daily

activities" when he referenced her walking, driving, performance of household chores, regular church attendance, and so forth. (R. 31.) He also considered the effects of the Plaintiff's medications, noting that her "back pain is relieved through over-the-counter medication, and her symptoms are improving." (R. 29.) With respect to mental health impairments, the ALJ noted that the Plaintiff "responded well to interventions" at the Wheeler Clinic. (R. 30.)

The Plaintiff complains that the ALJ cherry-picked the record on her activities of daily living (ECF No. 12-1, at 21), but this argument is unpersuasive. "The term 'cherry picking' generally refers to 'improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source.'" *Rodriguez v. Colvin*, No. 3:13-cv-01195 (DFM), 2016 WL 3023972, at *2 (D. Conn. May 25, 2016). The concept generally does not apply when the record demonstrates "that the ALJ took into account, and gave weight to, evidence . . . that [the claimant] could not perform many physical tasks as a result of" her symptoms. *Sena v. Berryhill*, No. 3:17-cv-00912 (MPS), 2018 WL 3854771, at *11 (D. Conn. Aug. 14, 2018). It also has been held not to apply when "the sheer number of times the ALJ cited" the relevant pieces of medical evidence "demonstrates that the ALJ certainly took them into account, even if he did not quote the aspects of the notes that were more favorable to" the claimant's claim. *Id.* In this case, the Plaintiff argues that the ALJ cited only those aspects of her Adult Function Report that undermined her claims, ignoring those "which were supportive of disability." (ECF No. 12-1, at 21.) But the record clearly reflects that the ALJ considered both sides of the report; for example, he expressly cited it in observing that the Plaintiff "reported an inability to work because of difficulty lifting, reaching, with concentration, understanding, using hands, and getting along with others." (R. 28.) "[W]hat a claimant may label as cherry-picking can often be described 'more neutrally as weighing the evidence.'" *Lisa T. v. Kijakazi*, No. 3:20-cv-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn.

June 21, 2022) (quoting *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009)).

The cases cited by the Plaintiff are inapposite. For example, in *Bogdan K. v. Kijakazi*, Judge Merriam concluded that the ALJ's adverse credibility determination was erroneously based on a fundamental misreading of a Disability Report and a Function Report. No. 3:20-cv-01341 (SALM), 2021 WL 3486868, at *6-7 (D. Conn. Aug. 9, 2021). There, the ALJ found that the Function Report "described a relatively high level of functioning despite his impairment(s)," highlighting that the plaintiff could prepare simple meals, go out alone, shop in stores, pay bills, count change, use a checkbook, play the guitar, play soccer, and enjoy fishing and working on cars. *Id.* But the court looked deeper and discovered that these observations were superficial and often inaccurate; for example, the record did not say that he *still* played guitar and soccer, but rather that he *used* to. *Id.* Thus, it was plain that the ALJ in that case had committed a "serious misreading of evidence." Here, the Plaintiff has not identified any such inaccuracies;[5] she merely disagrees with the relative weight the ALJ gave to the various elements of the Adult Function Report. The ALJ committed no error in his assessment of the Plaintiff's testimony.

E.    **The ALJ's Step Five Analysis**

1.    **The ALJ had Substantial Evidence for Job Numbers**

The Plaintiff argues that the ALJ's Step Five conclusion lacks substantial evidentiary support because the VE failed to identify the source of his job numbers. (ECF No. 12-1, at 9.) The VE provided Dictionary of Occupational Titles ("DOT") codes for the jobs he identified, but he did not clearly indicate his source for the approximate job numbers that he provided, nor did

---

[5]    The Plaintiff does make a one-sentence claim that "the ALJ summary that [she] can count change and finishing [sic] what she starts has no evidentiary support." (ECF No. 12-1, at 22.) But this is untrue; in her own report, she said that she could do these things. (R. 272 (checking "yes" when asked if she could count change); R. 274 (checking "yes" when asked if she "finish[es] what she start[s]").)

the ALJ or the Plaintiff ask him to do so.  (R. 82.)  The Plaintiff contends that an ALJ must always "inquire about the VE's methodology or sources upon which he relied regarding job incidence numbers," and that his decision always lacks substantial evidentiary support if he does not.  (ECF No. 12-1, at 10.)

This contention has been rejected by several courts in this District.  In *Crespo*, for example, the plaintiff argued that "the substantial evidence standard is not satisfied as a matter of law if an ALJ relies on job-numbers data from a vocational expert who does not state what source or sources she relied on to arrive at these numbers."  2019 WL 4686763, at *8.  Judge Meyer rejected the argument, holding that an ALJ can reasonably rely on an experienced VE without inquiring about his sources.  "[T]he substantial evidence standard does not foreclose an ALJ from relying on the expertise of a vocational expert and to do so without requiring the expert to lay a further foundation about the sources that the expert has consulted in order to arrive at the expert's job-number information."  *Id.* at *9.  "A vocational expert's recognized expertise provides the necessary foundation for his or her testimony."  *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (brackets omitted); *see also Stonick v. Saul*, No. 3:19-cv-01334 (TOF), 2020 WL 6129339, at *18 (D. Conn. Oct. 19, 2020) ("Other courts in this district have held . . . that a VE does not need to provide her sources for job incidence data."); *Keovilay v. Berryhill*, No. 3:19-cv-0735 (RAR), 2020 WL 3989567, at *9 (D. Conn. July 15, 2020) ("As in *Crespo*, [the VE's] failure to provide a source for the number of jobs in the economy does not 'dispel the existence of substantial evidence.'"); *Stacey M. F. v. Kijakazi*, No. 3:20-cv-01910 (VAB), 2022 WL 970092, at *21 (D. Conn. Mar. 31, 2022) ("[A] vocational expert's failure to identify their sources does not preclude the existence of substantial evidence for an ALJ's conclusion."); *Angelica M. v. Saul*, No. 3:20-cv-00727 (JCH), 2021 WL 2947679, at *9 (D. Conn. July 14, 2021) ("This court finds the

analysis and holding in *Crespo* persuasive.").

To be sure, contrary cases exist.  In *Hernandez v. Berryhill*, Judge Underhill held that there must be "some evidentiary basis" before an ALJ can rely on a VE's opinion, and that it would be "enough for a vocational expert to identify the sources he generally consulted to determine the availability of jobs, even if he does not provide specific information."  No. 3:17-cv-368 (SRU), 2018 WL 1532609, at *14 (D. Conn. Mar. 29, 2018).  But *Hernandez* preceded the Supreme Court's decision in *Biestek v. Berryhill*, 139 S.Ct. 1148 (2019), and courts have held that *Biestek* points toward a different result.  In *Crespo*, for example, Judge Meyer held that "[t]he Supreme Court's ruling in *Biestek* weighs against adopting the type of categorical rule that Crespo urges" – and that the Plaintiff in this case urges as well.  2019 WL 4686763, at *9.  If, after *Biestek*, "the substantial evidence requirement does not categorically require a vocational expert to disclose her job-numbers data, even when specifically requested, neither does it require a vocational expert to disclose the general source of her jobs-number data in the absence of any request."  *Id.; but see Tammy L. v. Kijakazi*, No. 3:21-cv-01026 (KAD), 2022 WL 2952626, at *5-6 (D. Conn. July 26, 2022).

Adopting the case-by-case approach taken by Judge Meyer in *Crespo*, I conclude that in the circumstances of this case the ALJ's Step Five conclusions were supported by substantial evidence, even though the VE did not identify the sources of his job numbers.  The VE testified that he is a certified rehabilitation counselor; that he received a master's degree in 2016; and that, as someone who works "within the workers' compensation system," he has "experience placing individuals into work in the national economy."  (R. 80.)  The ALJ gave the Plaintiff a full and fair opportunity to question the VE about his credentials, but she declined.  (*Id.*)  The ALJ then concluded that the VE was qualified to testify, and he added that the VE had testified before him

in other hearings and had been approved by the agency to testify at Social Security hearings.  (*Id.*)  His resume is also in the record, which confirms that he received a Master of Science in Rehabilitation Counseling and has been working as a VE since 2019.  (R. 335-36.)  Additionally, the job numbers testimony here is nearly identical to the testimony in *Crespo*, and I see no reason to depart from Judge Meyer's well-reasoned analysis and holding in that case.  I conclude that the VE's testimony supplied substantial evidentiary support for the ALJ's conclusion that the identified jobs exist in significant numbers in the national economy.

### 2.    There is no Patent Conflict with the DOT

Finally, the Plaintiff also argues that the ALJ failed to resolve a patent conflict between the VE's testimony and the DOT.  (ECF No. 12-1, at 10-11.)  According to the Plaintiff, the RFC contained several limitations that are not addressed by the DOT.  (*Id.*)  The Commissioner responds that the discrepancy the Plaintiff has highlighted is not a true conflict.  (ECF No. 18-1, at 21.)  The Commissioner is correct.

"[A] VE whose evidence conflicts with the DOT must provide a 'reasonable explanation' to the ALJ for the conflict."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 446 (2d Cir. 2012).  But the "conflict" asserted by the Plaintiff – namely, that the DOT does not account for all the limitations that the ALJ posed to the VE – is not the sort of conflict contemplated by this body of case law.  For example, a conflict exists when the VE testifies that a plaintiff can perform jobs that the DOT states require "reaching," but the ALJ found that the Plaintiff could only "occasionally" reach overhead.  *Robinson v. Berryhill*, No. 6:18-cv-06135 (MAT), 2019 WL 416483, at *3 (W.D.N.Y. Feb. 2, 2019); *Spears v. Colvin*, No. 15-cv-6236 (FPG), 2016 WL 4973890, at *4 (W.D.N.Y. Sept. 19, 2016).  A conflict also exists when the VE testifies that the plaintiff can perform jobs that, according to the DOT, require an ability communicate in English – but the ALJ

finds that the claimant is unable to do so. *Afari v. Berryhill*, No. 16-cv-595 (FPG), 2017 WL 1963583, at *2 (W.D.N.Y. May 12, 2017); *Maria R. v. Comm'r of Soc. Sec.*, No. 20-cv-6651 (FPG), 2022 WL 883776, at *3 (W.D.N.Y. Mar. 25, 2022). These cases present clear situations where the job requirements according to the DOT conflict with the RFC that the ALJ identified.

Here, the DOT is merely silent on some of the limitations that the ALJ imposed. Courts have rejected the argument that this presents a conflict. *See, e.g., Antonio P. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-cv-62 (SALM), 2021 WL 5768545, at *8 (D. Conn. Dec. 6, 2021) ("Where, however, the DOT is silent on an issue, no actual conflict exists between the VE testimony and the DOT."); *Moslow v. Berryhill*, No. 1:16-cv-00198-MAT, 2019 WL 1508045, at *5 (W.D.N.Y. Apr. 4, 2019) ("Courts in this district have repeatedly found that when the DOT is silent on an issue, no actual conflict exists between the VE testimony and the DOT."); *Dewey v. Colvin*, 650 F. App'x 512, 514 (9th Cir. 2016) ("[T]he DOT is silent on whether the jobs in question allow for a sit/stand option. There is no conflict."). Nor does the Plaintiff even argue that the jobs that the VE identified – photocopy machine operator, marker, and routing clerk – conflict with the limitations that the ALJ imposed. I thus conclude that there was no conflict between the DOT and the VE's testimony, and that there was no legal error at Step Five.

## IV.   CONCLUSION

For the reasons stated above, I conclude that the ALJ's decision was supported by substantial evidence and free from legal error. I therefore recommend that the Plaintiff's Objection to the Supplemental Record (ECF No. 21) be **OVERRULED**; that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 12) be **DENIED**; that the Defendant's Motion to Affirm the Decision of the Commissioner (ECF No. 18) be **GRANTED**; and that judgment enter

in favor of the Commissioner.

This is a recommended ruling by a Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(1). Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with this order. *See* Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen (14) days will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; D. Conn. L. Civ. R. 72.2; *Impala v. United States Dept. of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order) (failure to file timely objection to Magistrate Judge's recommended ruling will preclude further appeal to Second Circuit); *Small v. Sec'y of H.H.S.*, 892 F.2d 15 (2d Cir. 1989) (per curiam).

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge